May I please report Aaron Tiller appearing on behalf of the appellant Vincent Manikan. Your Honor, I would ask that I could reserve two minutes of time for rebuttal. You may, but watch your clock. I will, I will, Your Honor. Your Honor, the issues in this appeal I think have gone awry from what the true issues of this case are, which is that this is a fair debt collection practices violation. This was a prima facie unlawful foreclosure whereby Peters & Freedman, the appellee in this case, went, initiated foreclosure and threatened to initiate foreclosure in direct violation of 15 U.S. Code section 1692 F6 against my client when there was no amount owed. And that is undisputed based upon the request for admissions number, answer to the request for admission number 13 and 14 where they stated there was no amount owed and that they initiated foreclosure. The appellee in this case has artfully made this about bankruptcy because they're trying to find a loophole for a violation of the FDCPA by invoking walls and making this about a discharge violation. However, as in their only case cited to in their letter brief where they talk about GUDALAC, which was the recent H Ninth Circuit holding regarding HOAs, it was clear in that lengthy discussion regarding the Fifth Amendment and the Savings Clause where GUDALAC stated, yes, an HOA is a pre-petition claim and yes, it can be discharged, but they very clearly laid out that NREM rights are not affected by Chapter 13. So GUDALAC, had GUDALAC not surrendered the property, nothing would have stopped that HOA from foreclosing and exercising their NREM rights, which would have been lawful, just as Peters and Freeman in this case. If you read appellee's brief, page 10, there's a summary of internal emails and even the paralegal at the firm knew that there was a discharge, but stated, Mr. Manikin still owes us money, so we have the right to foreclose because they even understood the basic concept that is, we still have our NREM rights regardless of a discharge. And so on that basis alone, this does not invoke WALS because WALS stood for the narrow proposition for when one federal statute could repeal another, when there is a narrow situation by which, by they were trying to use, by filing an FDCPA violation based solely upon a discharge violation, what you're in fact doing is getting through the back door, what Congress specifically deprived debtors of through the front door by excluding a private right of action under 11 U.S. Code section 105. And I think that is the crux of WALS that needs to be, that has to be the test when this court is deciding this case. If you look at these facts, was WALS implicated? And the only way WALS is implicated is if there was a discharge, there was a violation, and if there wasn't a discharge, there was no violation. That's WALS ruling. It has to be a legal causation, but for the discharge, was this unlawful collection action lawful? I have a question for you. Yes. So do you disagree that your client could rely on the discharge as one of perhaps many reasons why the debt should not have been collected or attempted to be collected? I believe, Your Honor, that the because whether or not there was a discharge, the act of, it is basic, it is not a violation of 105 in the discharge for Peterson Freeman to walk up to my client's door and serve him with a notice of default. It happens all the time. In Gutelak, it happened, and the impersonal obligation was the road after the foreclosure. The answer was no, because you're collecting on an impersonal obligation, which was a pre-petition claim. In this situation, the act of having a process server serve with a notice of default, that is an NREM collection action, which is not precluded by a Chapter 13, which is exactly what the argument, the Fifth Amendment Savings Clause arguments that was analyzed in Gutelak stated. We are not depriving property without just compensation, because the HOA, despite a discharge, still has the right to repossess and foreclose upon that residence. I have a question too. So to go back to basics, was Manningham's debt covered by discharge? No, it was not, and that is even just further. Even if this court were to follow the arguments made in Apelli's letter brief, whereby this debt was treated at under 1322C, which is glaringly that Apelli's brief omitted any case law, and the reason why there was an omission of any case law to support that argument is, it's just not the case. Bankruptcy law 1322C is merely, if you research 1322C-1, first off, it references B-5, because it addresses those claims. All it is, is an exception to the anti-cram down and modification under 1322B-2 for principal residence. It's purely an ability that a debtor on a short term, usually it's a hard money lender with four months, they'll allow them to cram down under secured claim, whereas under 1322B-2, it is a strict prohibition against the modification of claims on principal residence. That's where 1322C, and that is why, very glaringly, if you read Apelli's letter brief, there's not one case law to support this proposition that HOAs are treated. However, if you read our brief, we shattered to two Ninth Circuit bankruptcy appellate panel cases, where we clearly state that the case Foster v. Double R Ranch Association literally states, the debtor's obligation on post-petition HOAs is clearly a 1322B-5 claim, which is accepted from discharge under 1320A-1. And so- Wasn't that overruled by, I don't know how to say it, the Gudelac case? It was overruled, not overruled, Your Honor, it was overruled on other grounds. And the other grounds was, is that they relied upon, there was a progeny of cases that ultimately, prior to this, I mean, the irony when we were preparing for this case is, I think this is the first time an HOA has ever argued that an HOA claim is discharged. And they're doing that because they're trying to get around a blatant FDCBA violation. But- Well, I'm going to stop here a little bit, because we're sort of talking about two different things here. We're talking about the arrearage that occurred pre-petition, and then we're talking about ongoing payments, and they're going to go on into the future, however long your client has this property. So, I mean, this case is only about the arrearage, because the re-initiated foreclosure proceeding post-bankruptcy was only about the arrearage. And so, is it your position that that arrearage, separate from the ongoing payments, was not subject to the discharge? Absolutely. It was absolutely not, Your Honor, and it's clear from the statute. 11 U.S. Code Section 1328A states, upon completion of the plan, the debtor shall receive a discharge except the following. And the very first exception is claims that are provided for under 1322B5. And I want to emphasize provided for. Provided for, counsel, is very broadly understood, is it not? It is broadly understood- arrearage that the debtor sought to satisfy, partly through Chapter 13 and partly through payments of his own, independently, right? In that, as the Supreme Court stated in Rake v. Wade, provided for is encompassing. If you're referencing it, how you treat it is how they define as provided for. And yes, but for. If there was a balance owed, which there wasn't, this was paid off, there was nothing to discharge. And the NREM obligation, which I keep bringing back to, the right to foreclose, as Godelak stated, NREM obligations are not discharged in Chapter 13. But I will just reiterate, provided for, there is no dispute. If you read the plain language, Paragraph 5, Excerpts of the Record, Page 217, Paragraph 9, clearly states, the debtor was going to cure the arrears of the Pacific Ridge Homeowners Association, going to continue to make the current payments on the Pacific Ridge Homeowners Association. And this is very important, Your Honor. It's stated in the plan and continue to make payments after. And how provided for is treatment. How was this plan treated? There is no under 1322B5 because it hits the three main requirements and the definition of 13225. I would request that I could reserve my time unless there are questions, further questions that are unclear. All right, but you, okay, you can reserve some time. Thank you, counsel. Thank you. Okay. Counsel for Peters and Friedman. Your Honor, can you hear me? Yes. May it please the Court, Leah Strickland on behalf of Appellee Peters and Friedman. So the primary problem with applying Section 1322B5, and my apologies, we didn't raise this in our briefing, but not only does it do away with Section 523A16 and the distinction that the 524C applies to reaffirmation requirements in order for a reaffirmation of a debt or an obligation to be valid under a bankruptcy plan. 524C applies in Chapter 13. If we apply... No, excuse me. So you're saying this is an argument you haven't raised before? It's something that in trying to figure out how these code sections are coherently applied together, it's something that occurred to me as I was preparing for argument. Okay. So the answer to my question is this particular argument is not raised in any of your briefs? Correct. So in my briefing, I raised 523A16 and good luck. Good luck held that future HOA dues are dischargeable under... What's your best argument, counsel? Give us your best argument. I don't want to know your fleeting thoughts. I mean, to bring up a new argument. So this is my best argument. In order for... If you've never made before, your best argument is one you've never made before. The bankruptcy code... Counsel, you're not answering my question. Your best argument is the one you have not made before. It is a good argument. The answer to my question, yes or no? I don't know if it's my best argument. I think it's a good argument, but... You're going to try it out. Okay. I don't know if we're going to absorb it, the interplay of all these code sections when it hasn't been raised to us before. Okay. So the things that have been raised is the fact that good luck specifically held that future HOA dues are dischargeable under chapter 13, under a subsection A discharge. For that to make sense, you can't provide for future HOA dues under 1322B5. And there are multiple reasons for that. We went over it in our briefing. The future dues are not personal obligations of the debtor unless and until they're actually assessed. Now, in this case... It really doesn't even fit the definition of debt, does it? I agree. And for that reason, the debtor himself under Schedule D, on excerpts of record 165, the claim he identified was limited to pass-through assessments. The claim that the creditor filed at excerpts of record 216 was limited to pass-through assessments. HOAs cannot make a claim for future dues because it's not a personal obligation of the debtor unless and until that date has passed. If you look at the plain reading of the code under 1322B5, it only applies to claims on which the last payment is due. And it can only make sense if that's due by the debtor on the date that the plan is confirmed. Go ahead, Judge Hunsaker. Go ahead. Why do the forward-going payments matter at all for this case? Because what we're talking about is the arrearage. I agree. The court asked about section 1322B5. Under 1322B5, the future payments that are provided for by the plan are not subject to discharge. The implication would be that potentially 1322B5 also provides that past payments would not be subject to discharge. I don't believe that that's the case for multiple reasons, which I've gone over in the briefing. 1322B2 provides that secured creditors, their claims can't be modified. But as I set out in my briefing, an HOA's future claims is never secured. So that doesn't come under the ambit of that code section. It's just not a fit and it would do away with this court's decision in 1322A, future HOA dues are subject to discharge. I wondered, counsel. Actually, I'm asking your opponent here, if this kind of line of reasoning is why he's addressing in rem, his in rem argument that this follows the real estate, this future dues, I'm not sure where he got, I don't know about in rem, but is that why you're addressing it? Well, your honor, in the letter brief. Oh, no, it's not your turn. Sorry. So, and to touch on the way the code sections work together, that Goldilocks specifically held that future dues are dischargeable. As a dischargeable obligation, reaffirmation of that would be subject to 524C. Counsel, let me ask you a question. So future dues are dischargeable, but the question here, I guess it's twofold. One, were future dues dischargeable? And two, is that what your client was trying to foreclose the house? No, it was as to the past due amount of... And the past due amount was paid off prior in time to the discharge and bankruptcy, correct? That is my understanding, and there's certainly documentation to that effect in the record. And so at the point in time when your client tried to foreclose on Mannequin's home, nothing was due and owing, right? That is correct. And how is that foreclosure related at all to the discharge? The foreclosure would have been... The reason that serving the notice of default in election to foreclose was wrongful was because of the operation of the bankruptcy code. The debt was provided for by the plan, the debtor paid whatever it is that the plan provided, and at the close of the Chapter 13 case, the discharge injunction was entered. Doing anything with that debt in seeking to collect it became a violation of the discharge injunction. The lien on the house was only void because of the Chapter 13 plan. Well, do you know whether in bankruptcy law, the Mannequin could go into bankruptcy court and your client's attempt to foreclose on his house was in contempt of the discharge order? That is our position, that there is a remedy for this situation, and that remedy is in bankruptcy court through seeking a contempt order for violation of the discharge injunction. Okay. Do you have any case law that you've cited or you can refer to me in your briefs where the case stands for that principle under these facts? I don't believe that there's a case that's on all fours under these facts, Your Honor. I'm not aware of any case on either of our briefs that addresses this particular situation. So, I want to ask you a question. Let's assume that a debtor has multiple reasons to contend against collection activity, and one of them has to do with a bankruptcy discharge, but they have other reasons that stand alone separate from the discharge, you know, alternative basis to challenge a collection activity. In that scenario, do you think WALLS applies? Because their only argument was inextricably connected to a discharge. So, I'm asking you to assume there's multiple arguments, they don't all hinge on bankruptcy, does WALLS apply? So, it depends on what the basis is for asserting the FDCPA claim, and we're talking about FDCPA. FDCPA prohibits a number of activities, some of which include harassing phone calls, the harassment itself, making multiple calls. That's not something necessarily covered by a discharge injunction. Contacting the debtor about a discharge debt and trying to get them to pay it is, but there are things in the FDCPA that might be outside of the ambit of WALLS. But where the argument is that this is wrongful because the debt's not owed because of bankruptcy, that's when WALLS kicks in, and that's the situation here. So, can, counsel, can a FDCPA claim be predicated on a debt provided for in the discharge injunction without being predicated on the injunction itself? I don't believe so, Your Honor. When anything concerning the amount of the debt, it's too high, it's not owed, that's all going to implicate the discharge injunction. And that's the claim here, that this was wrongful because the debt was paid through bankruptcy, and the discharge injunction applies, which is the necessary implication of that. Otherwise, if WALLS doesn't apply in a scenario where the amount is alleged to be wrongful, it's just going to be a case that's null and void because it's going to be very easy to plead around. I will ask your opponent the same question. Okay. Thank you, counsel. I'll give you another minute. Your Honor, and I would just respond that I respectfully completely disagree. I think that there are many cases, fair credit reporting cases, where it involves reporting a discharged debt incorrectly. And that was a claim under the FCRA, the fair credit reporting, because it was the information that was incorrect. That was the basis. And the fact that it was a discharge or 60 days late, that information is the sole basis. In this situation, and I would just reiterate, Goodalock, had they served the notice of default on Goodalock, they foreclosed on the residence of Goodalock. That was not a violation of the discharge effect in persona rights. This violation would have been lawful. And I think that's the test. WALLS stood for the proposition that because Congress denied the right to a private right of action through the front door, through a debt, they did not include a private right of action in 105 for a discharge violation. They were not going to allow through the back door, what was specifically not allowed through the front door. And so it's only the rare decisions based upon lengthy, many, many Supreme Court cases stating that two federal statutes must be allowed to equally exist unless they complete flip to the point where it's repealed by implication. One federal statute cannot preempt another. And so it's very important to look at in this situation, the question should be, could, if there had not been a discharge, would there still have been an actual claim? And the answer is unequivocally yes. Had they foreclosed when they admit no balance was owed, that would be a violation of the FDCPA, specifically 15 U.S. Code section 1692 F6, which is the threat to a non-judicially foreclosed when they had no right to do so, which has been admitted in requests for admission 13 and 14. Judge Cook, did you have a question? Well, I think counsel has addressed it. I think that's fine. All right. Thank you very much, counsel, for your helpful argument today. This session of this court will be adjourned. Thank you, Your Honor.
judges: Cook, Wardlaw, Hunsaker